631 So.2d 120 (1993)
James M. HALL
v.
The MISSISSIPPI BAR.
No. 92-BA-0155.
Supreme Court of Mississippi.
December 9, 1993.
Rehearing and Modification Denied February 10, 1994.
*121 J. Benjamin Newton, Jr., Wiggins, Frank D. Montague, Jr., Montague Pittman & Varnado, Hattiesburg, Robert S. Newton, Newton & Newton, Wiggins, for appellant.
James M. Hall, pro se.
Charles J. Mikhail, Michael B. Martz, Jackson, for appellee.
En Banc.
DAN M. LEE, Presiding Justice, for the Court:

STATEMENT OF THE CASE
On March 22, 1991, the Mississippi Bar filed a formal complaint against James M. Hall, alleging professional misconduct in the representation of Thaddis Sellers. Hall was served with process on May 6, 1991, but filed no answer. The Bar moved for entry of default and a hearing was scheduled for December 17, 1991, to consider the motion. Hall was given notice of the hearing but did not appear. At the hearing, the Complaint Tribunal was presented with some of the Bar's evidence against Hall, particularly aggravating circumstances to be considered in determining the appropriate discipline. After the hearing, the Complaint Tribunal granted a Default Judgment which provided that the allegations of the formal complaint would be taken as true. The Tribunal also issued a bench ruling imposing a 90 day suspension. At this point Hall finally took an active role in the proceeding, filing a motion to Withhold Entry of Opinion and Judgment, to Allow Filing and Consideration of Written Matters in Mitigation and Explanation, and for Other Relief. The motion was denied.
On January 10, 1992, an Opinion suspending Hall for 90 days issued from the Complaint Tribunal. Hall appealed the adverse ruling to this Court while simultaneously unsuccessfully seeking to have the Default Judgment set aside so that he could present mitigating factors. On appeal, he raises the following issues:
I. Whether due process and equal protection considerations will tolerate enforcement of State Bar suspension/disbarment procedure which, as written and as proposed to be applied to sole practitioner lawyer, allows unequal treatment as compared to attorney in multi-lawyer firm.
II. Whether the State's highest court may ignore preclearance requirements of Section 5 of Federal Voting Rights Act in seeking to implement Rules of Discipline which effect change in election practice/procedure impacting candidacy.
III. Whether the Complaint Tribunal may consider inadmissible evidence in violation of confidentiality mandated by Rules of Discipline.
IV. Whether the Complaint Tribunal may conduct final dispositive hearing outside lawyer's home county in disregard of Disciplinary Rule 8.5.
V. Whether the Complaint Tribunal should be afforded an opportunity to consider this matter, particularly mitigating factors, in light of lawyer's motion to set aside default, reopen hearing and alter or amend judgment.
VI. Whether the ends of the disciplinary process would not be adequately served by reprimand where lawyer has forfeited 15 years of public service retirement to speed restitution and apologized to former client.
The discipline imposed by the Complaint Tribunal was appropriate in light of the offense and consistent with disciplinary measures adopted by this Court for comparable misconduct. Accordingly, the ninety day suspension imposed by the Complaint Tribunal is affirmed.

STATEMENT OF THE FACTS
Hall does not take issue with the factual findings entered by the Complaint Tribunal. These findings succinctly describe Hall's conduct and are paraphrased below.
*122 On December 28, 1983, a judgment for divorce was entered in Chancery Court in Stone County involving Thaddis Sellers and Carolyn Sellers Leeman. In 1988, Mr. Sellers employed Hall to represent him in a modification proceeding brought by Ms. Leeman.
The matter proceeded to judgment on March 8, 1989, and afterward a dispute arose as to whether certain medical expenses incurred by Ms. Leeman had been paid by Mr. Sellers. As a result, Ms. Leeman was ordered to provide to the court an itemization of all medical bills. Mr. Sellers was to then be allowed an opportunity to respond with proof of the expenses he had paid.
On March 28, 1989, Mr. Sellers forwarded information to Hall showing that most of the bills had been paid. At this point Hall became derelict in his duties to Sellers. He took no action with respect to the matter, even after being served with notice that Ms. Leeman was bringing a Motion for Judgment on for hearing on May 23, 1989. Mr. Sellers was unaware of these events.
On June 28, 1989, a judgment in the sum of $9,768.07 was entered against Mr. Sellers. Apparently Mr. Sellers was not informed of this action. On July 25, 1989, Mr. Sellers wrote to Hall for a status report. Hall did not reply to this letter or to the several telephone calls that followed.
On December 7, 1989, Mr. Sellers learned that a judgment had been enrolled against him in the state of Georgia where he was residing. He expended considerable amounts of money in his unsuccessful attempt to have the judgment set aside. This, along with the eventual satisfaction of the judgment, purportedly pushed Sellers to the brink of bankruptcy.
From these facts, the tribunal found clear and convincing evidence that Hall violated the following Rules of Professional Conduct:
1.3  failure to act with reasonable diligence;
1.4  failure to keep client reasonably informed;
1.15  failure to safekeep client property; and
8.4  engaging in conduct prejudicial to the administration of justice.
Hall duly perfected his appeal to this Court.

DISCUSSION

Standard of Review.
In considering appeals of this nature, we employ a de novo standard of review because, "The Supreme Court of Mississippi has exclusive and inherent jurisdiction of matters pertaining to attorney discipline... ." Rule 1 of the Rules of Discipline for the Mississippi State Bar (1984). "The Court may impose sanctions either more or less severe than the Complaint Tribunal, although deference is given to that body's findings due to its exclusive opportunity to observe the demeanor and attitude of the witnesses." Broome v. Mississippi Bar, 603 So.2d 349 (Miss. 1992). In this case, no witnesses were called because Hall did not defend against the Complaint.

I. Whether due process and equal protection considerations will tolerate enforcement of State Bar suspension/disbarment procedure which, as written and as proposed to be applied to sole practitioner lawyer, allows unequal treatment as compared to attorney in multi-lawyer firm.
In short order Hall manages to assert that the current system for attorney discipline in Mississippi violates his right to freedom of association, his right to equal protection, his right to due process, and the strictures of the Mississippi Constitution.

A. Freedom of Association/Equal Protection.
The following is the substance of Hall's assertion with regard to freedom of association and the right to equal protection:
This Court's Disciplinary Rules and the Complaint Tribunal's Opinion and Judgment propose immediate suspension of this lawyer's practice, requiring him forthwith to notify his clients of the suspension, of his inability to practice and that they may come and pick up their files. There is no avenue afforded Hall  or any sole practitioner  to recoup for services rendered *123 and expenses incurred prior to suspension. [cite omitted]. An attorney who chooses to associate with other attorneys and practice in a law partnership or other association is favored in Mississippi: "If the client agrees, the law partners of a suspended or disbarred attorney may continue to represent any client affected by the suspension or disbarment...." Equal treatment is denied a sole practitioner such as Hall.
(citations omitted).
Procedure (11.4) under Rule 11 of the Rules of Discipline provides as follows:
(11.4) Law Partners  Continuance of Representation.  If the client agrees, the law partners of a suspended or disbarred attorney may continue to represent any client affected by the suspension or disbarment, but notice thereof shall be given as set out above.
(emphasis added).
This issue may be disposed of without a prolix constitutional analysis. As the Bar points out, Rule 11 has an identical impact on all lawyers. Any suspended attorney's ability to collect fees for services rendered prior to suspension is dependent on the client selecting a replacement who is amenable to dividing revenues derived from the representation. Presumably, if the suspended attorney still has the ability to influence a client's choice, it would be easy enough to recommend a non-partner lawyer who would be willing to share the fee.[1] Absent some showing of unequal impact or some effect on Hall's associational freedom, there is no need to delve further into this issue.

B. Due Process/Mississippi Constitution.
Hall asserts that the current Rules of Discipline also violate the Mississippi Constitution, "Section 33 of the 1890 Constitution vests all legislative power in the Mississippi Legislature. This power is recognized to include regulating the practice of law."[2]
Contrary to Hall's assertion, however, such proceedings are an integral part of the functioning of the judicial branch and thus not properly subject to the "legislative power" vested in Section 33. This question was laid to rest when the Court adopted the Rules of Discipline. Rule 29 specifically states that the Rules of Discipline supersede all statutes on the subject. Accordingly, the issues raised by Hall under this point are without merit.

II. Whether the State's highest court may ignore preclearance requirements of Section 5 of Federal Voting Rights Act in seeking to implement Rules of Discipline which effect change in election practice/procedure impacting candidacy.
This issue may also be resolved with little discussion. Hall argues that the Rules of Discipline are unenforceable for failure to meet federal preclearance requirements because:
The Rules of Discipline here at bar, as written and as proposed to be applied to Hall via the Complaint Tribunal's Judgment, clearly eliminate Hall's eligibility to become or remain a candidate for the offices of county prosecuting attorney, district attorney, attorney general, circuit judge, chancellor, and supreme court justice.
As this Court has stated, "Section 5 of the Voting Rights Act of 1965, 42 U.S.C.S. § 1973c, requires federal approval of changes in voting requirements or procedures of states covered by the Act to prevent any changes which might deny or abridge the right to vote on account of race or color." Jackson County School Bd. v. Osborn, 605 So.2d 731 (Miss. 1992) (citing Perkins v. Matthews, 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971)).
This issue is totally without merit for two reasons. First, assuming changes in candidate *124 eligibility requirements are subject to preclearance requirements (which they appear to be), there has been no change in these requirements since the Voting Rights Act was adopted. Candidates for the offices listed above were required to be attorneys long before the effective date of the Voting Rights Act (November 1, 1964). Hall's misconduct and the resulting suspension are the cause of his ineligibility, not the promulgation of the Rules of Discipline. As for the one or more black electors who will be denied the opportunity to vote for Hall, suffice it to say that this denial will not be on account of anyone's race but on account of his disregard for his professional responsibilities.

III. Whether the Complaint Tribunal may consider inadmissible evidence in violation of confidentiality mandated by Rules of Discipline.
Under this issue Hall cites Rule 15 and its pronouncement that all participants in disciplinary proceedings are "strictly enjoined to keep and maintain confidential, all things arising under these rules and proceedings thereon." From this premise, he concludes that his two prior reprimands (one of which was upgraded by this Court to a sixty day suspension after the hearing on this matter) were inadmissible as aggravating factors in the present proceeding.
Under Rule 15, parties involved in disciplinary proceedings cannot disclose to the public anything pertaining to those proceedings unless the accused attorney consents or public discipline is imposed. Confidentiality cannot be breached by the Bar when it "discloses" prior punishments imposed by this Court to a Complaint Tribunal which is itself an extension of the Court. Furthermore, "it is well settled that a complaint tribunal may consider prior disciplinary offenses of the attorney as an aggravating factor when deciding what type and degree of discipline to impose." Haimes v. Mississippi Bar, 601 So.2d 851 (Miss. 1992). Finally, even if such "disclosure" were a violation of Rule 15, the proper remedy would likely be a contempt proceeding aimed at the violator rather than reversal of the tribunal's decision, especially where no objection was made below. Accordingly, this issue is without merit.

IV. Whether the Complaint Tribunal may conduct final dispositive hearing outside lawyer's home county in disregard of Disciplinary Rule 8.5.
On this point Hall relies on Procedure 8.5 under Rule 8 which provides that "Trials shall be held in the attorney's county of residence; provided, upon written waiver by the attorney or upon motion made by either party and order by the Tribunal, trial may be held elsewhere." In this case, a hearing on the Bar's motion for default judgment was held in Hinds County whereas Hall resides in Stone County.
The Bar asserts that the hearing on its motion for default judgment was not a trial under 8.5. It further argues that even so, its Notice of Hearing on its Motion for Default Judgment (which was served on Hall) was sufficient to constitute a motion under the rule. No authority is offered for either assertion.
The question presented by Hall is whether an attorney with notice who does not enter an appearance or otherwise participate in disciplinary proceedings against him may later rely on Rule 8.5 to defeat the discipline imposed.
Even if Hall had timely demanded a trial in Stone County, his demand could have been defeated by a motion from the Bar and an appropriate order from the Tribunal. Therefore, if the Tribunal erred in conducting its hearing in Hinds County without an appropriate motion from the Bar, the error was harmless. Perhaps a different result would be in order if Hall had lost a hotly contested trial in Hinds County while additional immobile witnesses went uncalled in Stone County. Under the facts of this case, however, this issue is without merit.

V. Whether the Complaint Tribunal should be afforded an opportunity to consider this matter, particularly mitigating factors, in light of lawyer's motion to set aside default, reopen hearing and alter or amend judgment.
Hall finally became involved in his case once the default judgment was entered. *125 He filed a total of four motions below seeking in one way or another to present his mitigation evidence before the Complaint Tribunal. The tribunal denied the first motion and apparently took no action with regard to the others. Hall also brought a "Motion to Authorize Tribunal to Act" before this Court in which he sought an order "authorizing" the Tribunal to consider his mitigation. This motion was denied by order dated March 25, 1992.
Now on appeal Hall seeks an(other) opportunity to present his mitigating evidence to a Complaint Tribunal. He asserts that entering a default against a party to a lawsuit is a "harsh and drastic action" and that, consequently, even a slight abuse of discretion should warrant reversal of the order. He cites federal authority for both these propositions.
The short answer to Hall's contention on this point is that, assuming applicability of Rule 55(c) and 60(b) as he contends, Hall has presented no evidence of anything approaching the "good cause" or "such terms as are just" requirements for setting aside a judgment under Rule 55(c) or 60(b), respectively. Instead, he focuses his efforts on asserting that no harm will come from giving him another chance to present his mitigation evidence. Rewarding attorneys who neglect matters as important as their own disciplinary hearings with another chance is harmful to the efficiency of such proceedings and further erodes public confidence in the legal profession. As this Court has stated, "Yes, a default judgment is a serious matter but so is not taking the proper steps to avoid one." Fougerousse v. Mississippi State Bar, 563 So.2d 1363 (Miss. 1990). Accordingly, we are not at all inclined to remand the case to a Complaint Tribunal for the purpose of receiving Hall's evidence of mitigating factors.
Whether to consider Hall's mitigation as part of the Court's de novo review of the discipline imposed is another matter. In Vining v. Mississippi State Bar, 508 So.2d 1047 (Miss. 1987), an attorney situated similarly to Hall was afforded consideration of mitigating circumstances raised in his brief and during his oral argument before this Court. Vining also failed to appear before the Complaint Tribunal, but the Court considered his health and personal problems in vacating a 120 day suspension. Thus, while relying on briefs and oral arguments is not the favored method for bringing the Court's attention to extenuating circumstances, it is an available method under Vining. Accordingly, Hall's asserted mitigating factors will be discussed below in conjunction with the determination of the proper discipline.

VI. Whether the ends of the disciplinary process would not be adequately served by reprimand where lawyer has forfeited 15 years of public service retirement to speed restitution and apologized to former client.
In a previous case involving James Hall, the Court stated:
This Court has listed several factors which it considers in determining the appropriate discipline for attorney misconduct. They are "(1) the nature of the misconduct involved; (2) the need to deter similar misconduct; (3) the preservation of the dignity and reputation of the profession; (4) the protection of the public; and (5) the sanctions imposed in similar cases." Mississippi State Bar v. Blackmon, 600 So.2d 166, 173 (Miss. 1992); Mississippi Bar v. Strauss, 601 So.2d 840, 844 (Miss. 1992); Attorney Q v. Mississippi State Bar, 587 So.2d 228, 234 (Miss. 1991); Fougerousse v. Miss. State Bar Ass'n, 563 So.2d 1363, 1366 (Miss. 1990). However, the most important consideration in imposing sanctions is that the punishment be sufficient to "vindicate in the eyes of the public the overall reputation of the bar." Mississippi State Bar Ass'n v. A Mississippi Attorney, 489 So.2d 1081, 1084 (Miss. 1986). Accord, Mississippi State Bar v. Smith, 577 So.2d 1249, 1252 (Miss. 1991).
In a number of cases of attorney misconduct, this Court has also considered the misconduct under the American Bar Association's Standards for Imposing Lawyer Sanctions (1986). Factors to consider under those standards include (1) the duty violated; (2) the lawyer's mental state; (3) the actual or potential injury caused by the *126 lawyer's misconduct; and (4) the existence of aggravating or mitigating factors. Blackmon, 600 So.2d at 173. Foote v. Mississippi State Bar Ass'n, 517 So.2d 561 (Miss. 1987), also quoted ABA Standard 4.42, which reads: "[S]uspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." Id. at 567.
The Mississippi Bar v. Hall, 612 So.2d 1075, 1077-78 (Miss. 1992).
Hall neglected the representation of his client Thaddis Sellers. The need to deter similar misconduct is great. Similar cases involving neglect, consequent client injury, and failure to appear before the Complaint Tribunal tend to support imposition of a suspension. See Fougerousse v. Miss. State Bar Ass'n, 563 So.2d 1363 (Miss. 1990) (two concurrent 90 day suspensions); Steighner v. Mississippi State Bar, 548 So.2d 1294 (Miss. 1989) (180 day suspension); see also, Broome v. Mississippi State Bar, 603 So.2d 349 (Miss. 1992) (This case is cited by Hall as establishing the outer limit of discipline, a 30 day suspension, for negligent representation. However, Broom's misconduct was an isolated incident of simple negligence, unlike Hall who repeatedly ignored Sellers' attempts to contact him).
At the hearing below, the Bar presented evidence of Seller's damages, which were established by a federal court at $17,609.58. The Bar also introduced evidence of Hall's previous disciplinary record. Hall had received both a private reprimand and a 60 day suspension for similar neglect of his client's interests.
Hall asserts the following as mitigating factors:
1. his difficult divorce with extended time consuming custody battle and related tax matters;
2. his time consuming representation of Stone County Board of Supervisors;
3. his mistaken belief that his representation of Sellers had ended;
4. his satisfaction of Seller's damages; and
5. his contrition.
Additionally, Hall's brief lists some of his good deeds and general philanthropic qualities. The mitigating factors Hall strives so hard to present do not excuse his neglect of his client's interest. These are substantially the same factors that were fully presented to the Tribunal in a subsequent proceeding involving Hall. That matter has already been finally resolved by this Court pursuant to the Bar's appeal. In The Mississippi Bar v. Hall, 612 So.2d 1075 (Miss. 1992), the Court overturned a private reprimand and imposed a 60 day suspension. Clearly, Hall's mitigation which is described on page 1076 of that opinion, was not compelling.
One final consideration related to the appropriate discipline does weigh in Hall's favor. The three instances of misconduct for which he has been found guilty all precede his first punishment. The misconduct occurred in 1986-89. The first private reprimand came in 1990. Obviously, the validity of considering prior discipline as an aggravating factor is based on the idea that one who violates the Rules again after being disciplined requires a harsher discipline for subsequent misconduct. This is apparently not the case with Hall. As far as the record reflects, his professional conduct has been adequate since his first reprimand in 1990. In simple terms, Hall's previous punishments may have provided the wake-up call he needed. Thus, a strong argument can be made that further discipline is not necessary to accomplish the goals of the Rules of Discipline and would only serve to punish Hall twice for the same basic misconduct. The Fougerousse case illustrates this argument. There the Bar consolidated two complaints involving different clients but occurring in close temporal proximity, with the end result being two concurrent 90 day suspensions. Here, the Bar seeks a total of 150 days for transgressions very similar to those in Fougerousse. Had Hall bothered to appear and make this argument, we might be inclined to agree. However, his general pattern of tardiness and delay extended beyond his first reprimand as manifested by his failure to appear before the Complaint Tribunal in December *127 of 1991. Accordingly, a second suspension is not overly harsh.

Motion to Strike Portions of Appellant's Brief, and for Sanctions.
The Bar has moved to strike the portions of Hall's brief that present mitigation evidence and to have sanctions imposed on Hall and his attorney for including such matters. The Bar argues that, "Little else could be more violative of due process than allowing one party the luxury of unilaterally offering on appeal evidence not presented to the Trial Court... ."
As long as Vining v. Mississippi State Bar, 508 So.2d 1047 (Miss. 1987), is viable precedent, an attorney in Hall's situation can attempt to present mitigation in briefs and oral argument, if granted. The Bar's motion is denied.

CONCLUSION
For the foregoing reasons, we find that the suspension imposed by the Complaint Tribunal was the proper discipline for Hall's misconduct. Accordingly, James M. Hall is hereby suspended from the practice of law in the State of Mississippi for a period of ninety days. The suspension shall begin upon the issuance of this opinion, and end ninety days thereafter with his automatic reinstatement.
SUSPENSION IMPOSED BY THE COMPLAINT TRIBUNAL IS AFFIRMED. JAMES M. HALL IS HEREBY SUSPENDED FROM THE PRACTICE OF LAW FOR A PERIOD OF NINETY (90) DAYS, EFFECTIVE THIS DATE, AND WILL BE AUTOMATICALLY REINSTATED AT THE END OF THE NINETY (90) DAY SUSPENSION PERIOD.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
NOTES
[1] The only minor difference between sole practitioners and partnership lawyers is the applicability of Rule 1.5(e) which governs division of fees.
[2] The case cited by Hall is Mississippi State Bar v. Collins, 214 Miss. 782, 59 So.2d 351 (1952). This case did not deal with disciplinary rules, and even if it had, it would not stand in light of more recent pronouncements on the Court's inherent authority. See e.g., Newell v. State, 308 So.2d 71 (Miss. 1975).